Filed 12/15/21  P. v. Diaz CA4/3

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE ALEJANDRO DIAZ,<br><br>    Defendant and Appellant. | G060214<br><br>(Super. Ct. Nos. 18CR011640<br> & 19CR009659)<br><br>MODIFICATION OF OPINION;<br>NO CHANGE IN JUDGMENT |

It is hereby ordered that the opinion filed herein on December 13, 2021, be modified in the following particulars:

1.  On the caption page, in the parenthetical with the superior court case number, replace "No." with "Nos."

2.  In the same parenthetical on the caption page, after "18CR011640," add "& 19CR009659).

These modifications do not effect a change in the judgment.



                                            BEDSWORTH, ACTING P. J.


WE CONCUR:



GOETHALS, J.



ZELON, J.*









*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief
Justice pursuant to article VI, section 6 of the California Constitution.

                                        2

Filed 12/13/21 P. v. Diaz CA4/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060214 |
| v. | (Super. Ct. No. 18CR011640) |
| JOSE ALEJANDRO DIAZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Monterey County, Pamela Butler, Judge. Affirmed in part, reversed in part, and remanded with directions.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Eric D. Share and John H. Deist, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Jose Alejandro Diaz was convicted of continuous child sex abuse and attempting to dissuade a witness. On appeal, he contends: 1) The trial court erroneously excluded evidence regarding the victim's prior allegations of sexual abuse; 2) the jury instruction on child sexual abuse accommodation syndrome (CSAAS) was flawed; 3) the prosecutor committed misconduct in closing argument; and 4) the trial court erred in imposing certain fines and fees without determining whether he had the ability to actually pay them. We agree with the last contention. Therefore, we reverse the subject fines and fees and remand for an ability-to-pay hearing. In all other respects, we affirm the judgment.

FACTS

Jane Doe was born in 2001. When she was seven years old, her mother met and married appellant, and they had a baby together a few years later. The following year, when Jane was 10, appellant began to molest her on a regular basis.

At that time, the family was living in Salinas. One day while Jane was cleaning up around the house, appellant had her lie down on his bed and proceeded to touch her breasts under her shirt. The incident made Jane feel very uncomfortable, but appellant told her not to tell anyone about it, so she kept it to herself. Following that initial episode, appellant molested Jane two to three times a week. Most of the time he touched only her breasts or butt, but sometimes he also put his hand inside her pants and touched her vagina.

The molestation continued after the family moved into an RV in Salinas when Jane was 11 years old. Once, appellant groped Jane's breasts while pretending to apply vapor rub to her chest, and another time, he pressed his erect penis against her from behind. There also was an incident where appellant touched Jane's breasts and vagina while she was trying to sleep inside the RV.

Jane testified to other incidents where appellant molested her in his car and at her grandma's house when she was 12 and 13 years old. Although Jane was able to

2

describe a number of the incidents in detail, she could not recall all of them because there were so many.

At one point, appellant's adult sister Marisela moved in with Jane and her family. Marisela was a survivor of child sex abuse herself. One day she asked Jane what was going on between her and appellant. After Jane told her about appellant had been molesting her, they drove to the police station. But once they got there, Jane lost her nerve, so they went home.

There, Marisela confronted appellant about Jane's allegations, resulting in a heated argument that ended with appellant kicking Marisela out of the house. After she left, appellant first got mad at Jane for telling Marisela about him then choked up and became teary-eyed and told Jane he would lose his immigration papers and her little brother would grow up without a father if she ever reported him to the authorities. So, in an effort to keep the family intact, Jane did not tell anyone else about the abuse, which paved the way for further mistreatment.

When Jane was in the eighth grade, she and her family moved to Texas. Almost every day before school, appellant would come into her bedroom and touch her in a sexual manner. The last time this occurred Jane was 16 years old. On that occasion, appellant touched her breasts early one morning while she was lying in bed facing the wall, and then he masturbated right beside her.[1]

The culmination of these events led Jane to tell her mother, and then the police, about appellant's actions in 2018, when she was 17 years old. By that time, Jane and everyone else in her family had returned to Salinas, except appellant, who stayed behind in Texas. As part of their investigation, the police had Jane make a "pretext" call to appellant to see if he would make any incriminating statements. At the beginning of the call, appellant denied any wrongdoing, but he eventually told Jane he was sorry and

---

[1] Appellant was not charged with any acts that occurred in Texas. However, those acts were admitted into evidence to prove he had a propensity to commit the acts that occurred in California.

3

would never touch or hurt her again. He also admitted he didn't know how to be a good father and was paying the price for being "an idiot."

Following appellant's arrest, he spoke with investigators about Jane's allegations. As in the pretext call, he denied any wrongdoing at first, but he then went on to admit that he did touch Jane inappropriately two times, once on her breasts and once near her groin. Appellant insisted those touchings were inadvertent and innocent, yet he did admit he found Jane attractive.

While he was in jail, appellant pressured Jane and her mother to drop the charges against him. He also enlisted the aid of others in this campaign, but it ultimately proved unsuccessful.

At trial, the defense attempted to undermine Jane's credibility by highlighting various inconsistencies between her trial testimony and what she told the police. Those inconsistencies related to the particular manner in which appellant sexually abused her and whether other members of her family were in the vicinity when the abuse occurred. The defense also brought out the fact Jane did not tell the police she revealed the abuse to Marisela before she told her mother about it.

On cross-examination, Jane also admitted appellant was very controlling and once got extremely upset when he discovered photos of nude men on her phone. However, Jane denied her allegations against appellant had anything to do with his strict disciplinary style. She said the photos were unsolicited, and she blocked the person who had sent them to her Facebook page.

The sole witness for the defense was Marisela. She testified that after Jane told her about how appellant had been molesting her, she confronted appellant in front Jane and her family. However, appellant acted like he didn't know what she was talking about, and the situation became very heated. According to Marisela, the confrontation ended when Jane started laughing and said she was lying about appellant abusing her. However, by that time, appellant was so upset he still kicked Marisela out of the house.

4

Marisela ultimately came to believe Jane made up the allegations against appellant because she disliked him and wanted to live with Marisela and her family.

During the trial, the prosecution called Dr. Anthony Urquiza to shed light on the phenomenon of child sexual abuse. Although Dr. Urquiza is an expert on CSAAS and described its various components to the jury, he did not mention that syndrome by name during his testimony. Instead, he framed his testimony as pertaining to the counterintuitive behavior children sometimes exhibit when they are being abused, and the common misconceptions about how child sex abuse victims are expected to act.

For example, Dr. Urquiza testified that, contrary to what many adults believe, delayed reporting of child sex abuse is common, especially if the victim has been abused by a person they trust or look up to. And when the victim does come forward, their reporting is not always clear and specific. While they may be able to recall the core acts involved, they will often have trouble remembering the peripheral details surrounding the abuse. In addition, they may retract their allegations if they have negative consequences for their family or the abuser. In fact, Dr. Urquiza said retraction occurs in about a quarter of the cases where a child has been sexually abused.

However, during his testimony Dr. Urquiza made it clear he knew nothing about this case, and it was not his job to determine whether a particular child has actually been abused. He also emphasized each situation is different, and not all children react the same way when they are sexually abused.

In the end, the jury convicted appellant of continuous child sexual abuse and two counts of attempting to dissuade a witness. (Pen. Code, § 288.5, subd. (a), 136.1, subd. (b)(2).) The trial court sentenced him to an aggregate term of 16 years in prison for his crimes.

DISCUSSION

*Evidence of Jane's Prior Allegations of Sexual Abuse*

Appellant contends the trial court abused its discretion and violated his confrontation rights by not allowing him to question Jane about allegations of sexual abuse she had made against other men before the instant case arose. We disagree.

Before trial, appellant moved pursuant to Evidence Code section 782 to admit evidence that Jane had accused two other men of molesting her when she was about seven years old.[2] The first man was her uncle Armando (her mother's brother), and the second man was her former stepfather Luis. As a result of Jane's allegations, both men were charged with child sexual abuse.

In support of the motion, defense counsel provided a sworn declaration containing an offer of proof as to the nature and relevance of the proposed evidence. The declaration averred that not long after Jane made the allegations against Armando and Luis, she recanted them, saying the alleged misconduct of both men could have been a dream. Consequently, the charges against Armando were dropped. However, by the time Jane recanted, Luis had already confessed and pleaded guilty to two counts of forcible lewd conduct with a child, for which he was sentenced to 16 years in prison.

Defense counsel further alleged that Jane was recently interviewed about the allegations she had made against Armando. During the interview, Jane stood by her allegations and said the only reason she retracted them is because Armando's family pressured her to do so. Nevertheless, defense counsel took the position that, one way or the other, the Armando incident demonstrated that Jane had made a false statement about being sexually abused in the past: Either she lied when she initially accused Armando of molesting her, or her subsequent retraction was untrue. As such, the evidence related to the credibility of her allegations against appellant in the current case.

---

[2] Unless noted otherwise, all further statutory references are to the Evidence Code.

6

In his opposition to motion, the prosecutor argued Jane's retraction of the allegations against Armando was suspect due to the pressure Armando's family had put on her. The prosecutor also pointed out Armando has never been found factually innocent of the allegations, and Luis was still in prison for what he did to Jane. All things considered, the prosecutor felt the evidence of Jane's prior allegations should be excluded because they had slight evidentiary value and would take up nearly as much time at trial as the allegations in this case.

The trial court agreed. At the hearing on appellant's motion, the court stated that if it allowed evidence of Jane's prior allegations, each side would have to litigate the truth of those allegations and the circumstances of Jane's retractions, thus creating "a mini-trial within a trial." The court believed this would be unduly time consuming and distract the jury from its primary task, which was to decide the truth of the charges against appellant, not the truth of Jane's allegations against other men. Therefore, it denied appellant's request to introduce the allegations into evidence without the need to hear further evidence on the issue. In so doing, the court described the prior allegations as "the poster child" for the type of protracted and confusing evidence that section 352 was designed to guard against.[3]

Generally, evidence of a complaining witness's prior sexual conduct is inadmissible in a sex crimes case. (§ 1103, subd. (c)(1).) "Such evidence may be admissible, though, when offered to attack the credibility of the complaining witness, provided that its probative value outweighs the danger of undue prejudice and the defendant otherwise complies with the procedures set forth in . . . section 782. First, the defendant must file a written motion and an offer of proof detailing the relevancy of the evidence. (*Id*., § 782, subds. (a) (1), (2).) If the court finds the offer sufficient, it shall

---

[3] Section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

order a hearing out of the presence of the jury to allow questioning of the complaining witness regarding the offer of proof. (*Id*., § 782, subd. (a)(3).) If the court finds the evidence [admissible], the court may make an order stating what evidence may be introduced by the defendant and what questions are permitted. (*Id*., § 782, subd. (a)(4).)" (*People v. Fontana* (2010) 49 Cal.4th 351, 354.)

In this case, the trial court determined appellant's offer of proof was insufficient to warrant an evidentiary hearing. Appellant contends this was error, but as part of their gatekeeping duties under section 782, trial judges are required to assess whether the proffered evidence regarding the victim's prior sexual activity is relevant and, if so, whether its probative value is outweighed by other considerations set forth in section 352. "Only if the judge determines both questions in favor of admissibility is the offer of proof 'sufficient'" to warrant an evidentiary hearing. (*People v. Blackburn* (1976) 56 Cal.App.3d 685, 691-692.)

We review the trial judge's ruling for an abuse of discretion. (*People v. Bautista* (2008) 163 Cal.App.4th 762, 781–782.) Thus, reversal is not required unless the judge exercised his or her discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

No such abuse occurred in this case. The evidence regarding Jane's prior allegations against Armando and Luis was offered by the defense to attack her credibility and show her allegations against appellant were untrue. However, Luis pleaded guilty to sexually abusing Jane and is currently serving a long prison term for doing so. And although the charges against Armando were dropped after Jane recanted her allegations against him, she said she was pressured to recant by Armando's family, and he has never been found factually innocent of the allegations.

Appellant contends it doesn't matter whether the allegations were true because even if they were, then Jane's retraction was a lie that the jury should have been

8

allowed to consider in evaluating her credibility. But, as Dr. Urquiza explained, it is not uncommon for children who have been sexually abused to retract their allegations, especially if, as here, they lead to family turmoil. Considering all of the circumstances surrounding Jane's prior allegations of sexual abuse, we do not believe they were particularly probative in terms of impeaching her credibility in this case.

Moreover, it would have taken a considerable amount of time to litigate the veracity of Jane's prior allegations during appellant's trial. "[A] prior false accusation of sexual molestation is . . . relevant on the issue of the molest victim's credibility." (*People v. Franklin* (1994) 25 Cal.App.4th 328, 335.) But proving Jane's allegations against Luis were false would have been a Herculean task considering he has already admitted they were true. And proving Jane's allegations against Armando were false would have been difficult as well considering the family dynamics at play and the fact that Jane continues to maintain Armando molested her. Given the limited probative value of the proffered evidence, as well as its likelihood of bogging down the trial and confusing and misleading the jury, we cannot say the trial court abused its discretion in excluding the evidence without conducting an evidentiary hearing.

Alternatively, appellant contends his attorney was ineffective for failing to challenge the trial court's ruling on the basis it violated his constitutional right to confront the witnesses against him. (See U.S. Const., 6th Amend.) However, trial judges have broad discretion to limit cross-examination based on concerns about undue delay, jury confusion and harassment of a witness. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679-680.) To prove his attorney was ineffective for failing to object on confrontation grounds below, appellant would have to show it is reasonably probable the jury would have received a significantly different impression of Jane's credibility had his attorney been allowed to cross-examine her about her prior allegations against Luis and Armando. (*Ibid.*; *Strickland* v. *Washington* (1984) 466 U.S. 668.)

9

In attempting to carry this burden, appellant argues the evidence of Jane's prior allegations of sexual abuse was "critical" in terms of evaluating the credibility of her testimony, and the jurors were given no other reason to believe Jane was lying about what appellant allegedly did to her. However, as explained above, when viewed in context, Jane's prior allegations against other men were not that probative of her credibility in this case. And the record shows that, notwithstanding the exclusion of the prior allegations, the defense had plenty to work with insofar as impeaching Jane's credibility.

For starters, the defense presented testimony from Marisela that Jane retracted her allegations against appellant when Marisela confronted him with those allegations in front of Jane. In addition, defense counsel cross-examined Jane extensively about various inconsistent statements she made to investigators before trial. And, defense counsel also made hay out the fact that Jane was unable to recall many of the details surrounding the sexual abuse to which appellant allegedly subjected her.

Given all these circumstances, it is not reasonably probable the trial court's decision to exclude the evidence of Jane's prior allegations of sexual abuse against other men materially affected her credibility in the eyes of the jury. Accordingly, defense counsel was not ineffective for failing to challenge that decision on the basis it violated appellant's right to confront Jane at trial.

*CSAAS Instruction*

Appellant's next argument pertains to Dr. Urquiza's testimony regarding the myths and misconceptions about how children react to being sexually abused. Although appellant does not contest the admissibility of that testimony, he contends the jury was improperly instructed on how to use it. We cannot agree.

Per CALCRIM No. 1193, the jurors were instructed, "You have heard testimony from Dr. Anthony Urquiza regarding counterintuitive victim behavior. Dr. Urquiza's testimony about counterintuitive victim behavior is not evidence [appellant]

10

committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not Jane Doe's conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of her testimony."

Appellant acknowledges the instruction expressly prohibited the jury from using Dr. Urquiza's testimony as proof he committed the charged offenses. However, he contends that prohibition was essentially meaningless because the instruction also allowed the jury to consider such testimony in assessing Jane's credibility. Indeed, appellant claims that by allowing the jury to consider Dr. Urquiza's testimony for this purpose, CALCRIM No. 1193 lessened the prosecution's burden of proof because the jurors likely used that testimony to support the truth of the sexual abuse charge.[4]

This claim runs counter to the well-established rule that jurors are presumed to understand and follow the instructions they are given. (*People v. Yeoman* (2003) 31 Cal.4th 93, 139 [describing this rule as "'[t]he crucial assumption underlying our constitutional system of trial by jury'"].) Appellant's argument also overlooks the primary reason CSAAS evidence is admissible in criminal trials. As explained in *People v. Gonzales* (2017) 16 Cal.App.5th 494, "The purpose of CSAAS is to understand a child's reactions when they have been abused. [¶] A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert's] testimony to conclude that [the child's] behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert's] testimony to conclude [the child] was, in fact, molested. The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert's] testimony will find both that [the child's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does

<hr>

[4] Although appellant did not object to the court giving CALCRIM No. 1193, we will consider his challenge to it because the instruction arguably infringed his substantial rights. (Pen. Code, § 1259.)

not show she had been molested. There is no conflict in the instruction." (*Id*. at p. 504; accord, *People v. Munch* (2020) 52 Cal.App.5th 464, 474.)

We agree. Appellant attempts to distinguish *Gonzales* on the basis the expert in that case testified CSAAS is not a tool for determining whether or not a particular child has actually been abused. But that is essentially what Dr. Urquiza told the jury in this case. He said each case and child is different, and there is no way to tell if a particular child has been sexually abused. In other words, there is no "one size fits all" method of detecting child sex abuse.

The prosecutor also acknowledged as much in his closing argument. He told the jury, "The fact [Jane's] conduct parallels with what you heard from Dr. Urquiza doesn't prove she's a victim or [appellant is] guilty." In light of everything the jurors were told, it is not reasonably likely they interpreted CALCRIM No. 1193 as a green light to use Dr. Urquiza's testimony as substantive evidence of appellant's guilt. We therefore reject appellant's claim the instruction violated due process and infringed his right to a fair and impartial trial.

*Closing Argument*

Appellant also contends the prosecutor committed misconduct in closing argument by imploring the jury to use common sense in assessing the evidence and deciding the truth of the charges. We cannot agree.

At the outset of his closing argument, the prosecutor told the jurors "this case is a great example of why it's important just for you to use your common sense. Just take your life experiences, your common life experiences to look at this whole situation, all the evidence. Apply the same standard to everyone, and just use your common sense. You do that, and this becomes an easy case, partly because of the evidence that you were given. [¶] I want to go to some of the bullet points, . . . where when you use your common sense it's plainly obvious what has happened."

12

The prosecutor then proceeded to discuss some of the particular evidence he believed was indicative of appellant's guilt. Then he talked about the elements of the charged offenses. In discussing the sex abuse charge, he said, "I'm not required to produce a second witness to say I also saw [appellant] touch [Jane] or I pulled his DNA from her private part. . . . And common sense can tell you why." And in discussing the witness intimidation count, the prosecutor urged the jury to use its common sense in determining whether the malice element had been proven.

The prosecutor returned to this theme later in his argument by telling the jurors that if they used their common sense, looked at the whole picture, and judged everything by the same standard, it was a simple case. He also repeatedly acknowledged he had the burden to prove the truth of the charges beyond a reasonable doubt. In so doing, the prosecutor said he was not required to eliminate all possible doubt, just reasonable doubt. And in terms of understanding the difference between those two standards, it was important for the jurors to use their common sense.

Appellant admits there was nothing improper about these statements under California law. He also concedes his attorney failed to contest any of the remarks he targets on appeal. In fact, rather than objecting to those remarks, defense counsel told the jurors he agreed "with what [the prosecutor] said as far as . . . not leav[ing] your common sense at the door. Do not leave your common sense at the door."

Nevertheless, appellant urges us to find the prosecutor's remarks improper based on two out-of-state decisions, *State v. Mitchell* (Ks. 2000) 7 P.3d 1135 and *State v. Hunter* (Mo. Ct. App. 1984) 676 S.W.2d 34. However, those cases are neither legally binding nor factually apposite. Whereas the prosecutors there explicitly equated the reasonable doubt standard with common sense, the prosecutor here simply encouraged the jury to use its common sense in evaluating the evidence and determining whether the charges were proven beyond a reasonable doubt. His remarks did not distort the burden of proof or constitute misconduct in any respect. Indeed, because a juror's background

13

and experience necessarily inform his decisionmaking, telling a juror to use common sense in approaching an issue "is little more than telling the juror to do what the juror cannot help but do." (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1240.)

*Fines and Fees*

At sentencing, the trial court ordered appellant to pay a $1,000 restitution fine, a $1,310 sex offender fine, a $90 court facilities fee, and a $120 court operations fee. (See Pen. Code, §§ 1202.4, 290.3, 1465.8; Gov. Code, § 70373.) Although appellant did not object to these monetary penalties when they were imposed, he filed a letter motion in the trial court while this appeal was pending asking the court to stay or reverse them. Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), appellant argued the penalties violate due process because he is indigent and disabled, and the court never made a finding he has the ability to pay them. Appellant sought a hearing on his ability to pay, but the court declined the request and refused to disturb the subject penalties.

Appellant contends this constitutes an abuse of discretion, and we agree. Per its terms, Penal Code section 1202.4 requires the trial court to consider the defendant's ability to pay when, as here, the court imposes a restitution fine above the mandatory minimum of $300. (Pen. Code, § 1202.4, subd. (d).) The imposition of a sexual offender fine under Penal Code section 290.3 is also expressly subject to the defendant's ability to pay. (Pen. Code, § 290.3, subd. (a).) And beyond that, *Dueñas* ruled due process requires the trial court to ascertain a defendant's present ability to pay before imposing a restitution fine or the type of court fees imposed in this case. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1164, 1167, 1172.)[5]

As appellant points out, the record indicates he is both indigent and physically disabled. Although he was worked at times during his lifetime, he is now

[5] The propriety of that ruling is currently before the Supreme Court in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.

14

52 years old and experiencing both visual and ambulatory problems.  Because there is a legitimate question as to whether he has the ability to work in prison or otherwise secure the means to pay the financial penalties imposed on him, we reverse those penalties and remand for a hearing on that issue.  (*People v. Santos* (2019) 38 Cal.App.5th 923, 933-934.)  At the hearing, appellant will have the burden to demonstrate his inability to pay; the prosecution need not prove he can.  (*Id*. at p. 934; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154 [burden of proof logically falls on the defendant since he is in the best position to know his financial situation and his ability to pay].)

## DISPOSITION

Appellant's restitution and sex offender fines, as well as his court facilities and operations fees, are reversed and the matter is remanded for a hearing on appellant's ability to pay those monetary penalties.  In all other respects, the judgment is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


GOETHALS, J.


ZELON, J.*


*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15